IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**RODNEY ARCENEAUX, # 79182-079**                                                    **PETITIONER**

**V.**                                                                   **CIVIL ACTION NO. 5:09cv86-DCB-MTP**

**BRUCE PEARSON, Warden**                                                         **RESPONDENT**

REPORT AND RECOMMENDATION

BEFORE THE COURT is the *pro se* Petition of Rodney Arceneaux for a Writ of Habeas Corpus [1] (the "Petition"), filed under 28 U.S.C. § 2241. Having considered the Petition, the Memorandum [2] in Support of Petition; the Answer [13], the Reply [15], the Response [16] to Reply, the Rebuttal [17] to Response, all matters made a part of the record in this case, as well as applicable law, the undersigned is of the opinion that the Petition should be dismissed with prejudice.

Background

Petitioner Rodney Arceneaux was convicted of Possession with Intent to Distribute Cocaine Base in the United States District Court for the Western District of Oklahoma and on January 6, 1999, was sentenced to serve 292 months, later reduced to 220 months, in the custody of the federal Bureau of Prisons ("BOP"). Petitioner is currently incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi ("FCC Yazoo City") and is projected to be released from BOP custody on May 27, 2014. *See* Exh. 1 to Answer.

In the Petition, filed on May 26, 2009, Petitioner challenges an Incident Report dated August 7, 2008 charging him with Refusing to Obey an Order by Staff Member (Code 307) and Assaulting Any Person (Code 224), and related disciplinary proceedings in which he was found guilty of the offenses. Specifically, on the morning of August 7, 2008, while being housed at the

special housing unit (SHU) at the Federal Correctional Institution in Oakdale, Louisiana,[1] Petitioner was being escorted from the recreational area back to his cell by Officer J. Ponthieux when Petitioner began arguing with and cursing at Officer J. Johnson. Petitioner then sat down and refused several orders to stand up. When Officers Ponthieux and Johnson attempted to pick up Petitioner, he lay on the floor and started kicking them. When the officers were able to regain control of Petitioner, they picked him up by the arms and began transporting him to his cell. Petitioner again began kicking the officers and they had to place him in the shower. Petitioner then kicked Officer Ponthieux in the groin. Subsequently, officers were able to remove Petitioner from the shower and return him to his cell. *See* August 7, 2008 Memoranda from Officers Ponthiuex and Johnson (Exh. 3 to Answer).

That day, staff prepared an Incident Report but its processing was suspended pending a referral to the Federal Bureau of Investigation (FBI) for possible criminal prosecution.[2] *See* Exhs. 4, 5 & 8 to Answer. The FBI declined prosecution and returned the Incident Report to the BOP on August 14, 2008. *See* Exhs. 4 & 8 to Answer. On August 14, 2008, BOP staff delivered a copy of the Incident Report to Petitioner, and Petitioner was advised of his rights. *See* Exh. 5 to Answer. The Unit Disciplinary Committee (UDC) conducted a hearing on August 18, 2008.[3]

---

[1] Petitioner was apparently transferred to FCC Yazoo City at some point following the challenged disciplinary proceedings.

[2] *See* 28 C.F.R. § 541.14(b)(1) ("When it appears likely that the incident may be the subject of criminal prosecution, the investigating officer shall suspend the investigation, and staff may not question the inmate until the Federal Bureau of Investigation or other investigative agency interviews have been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur.").

[3] 28 C.F.R. § 541.15(b) provides that the initial hearing will ordinarily be held within three work days of the day staff become aware of the inmate's involvement in the incident. When this cannot be accomplished, 28 C.F.R. § 541.15(k) provides for the UDC to extend the time for "good cause." The implementing language in Program Statement 5270.07, Inmate Discipline and Special Housing Units, ch. 6, p. 5 (available at

Petitioner indicated that he understood his rights and denied the charges, stating only "that the evidence is on the camera." *See* Exh. 5 to Answer. The UDC referred the charges to the Discipline Hearing Officer (DHO) for disposition.[4] *See id.* Petitioner was advised of his rights before the DHO. *See* Exh. 6 to Answer (Inmate Rights at Discipline Hearing form). Petitioner waived his right to a staff representative, and indicated that he wanted to call two witnesses at the hearing. *See* Exh. 7 to Answer (Notice of Discipline Hearing form). Although Petitioner was not able to sign either the Notice of Discipline Hearing form or the Inmate Rights at Discipline Hearing Form, as he was "cuffed to the rear" at the time,[5] the staff member who delivered the forms to Petitioner on August 28, 2008 (D. Bryant) signed his or her name indicating that Petitioner had been advised of his rights. *See* Exhs. 6, 7 & 9 to Answer.

The DHO hearing was held on September 17, 2008. At the hearing, Petitioner denied the charges, stating that he was never given an order to stand up. He claimed that the officers were trying to "drag him" and that he was handcuffed. He also denied kicking Officer Ponthieux in the groin. One of Petitioner's requested witnesses - inmate R. Smith - testified that the officers were dragging Petitioner to the shower by his arms, and it looked to him like they were trying to "rough him up." The other requested witness - inmate J. Rainey - was not called because he had been removed from FCI Oakdale on August 14, 2008. *See* Exh. 9 to Answer.

---

http://www.bop.gov/policy/progstat/5270_007.pdf), further calls for permission from the Warden for extensions beyond five work days. The record reflects that on August 20, 2008, the Acting Warden at FCI Oakdale approved an extension for the UDC beyond five work days, due to the suspension of the incident report pending the FBI's investigation. *See* Exh. 8 to Answer.

[4] *See* 28 C.F.R. 541.15 ("When an alleged violation of Bureau rules is serious and warrants consideration for other than minor sanctions, the UDC shall refer the charges to the Discipline Hearing Officer for further hearing.").

[5] According to Respondent, "[a]ll inmates housed in the SHU, whenever they are moved from their secure cells, must be handcuffed to the rear." *See* Answer at 6. Petitioner avers, however, that although all SHU inmates must be cuffed, they do not have to be cuffed in back. *See* Reply [15] at 1.

The DHO reviewed the evidence presented, including the memoranda from Officers Ponthieux and Johnson, a Medical Assessment of Officer Ponthieux dated August 7, 2008, which reported that Officer Ponthieux stated that he had been kicked in a "private area" and was "experiencing a tingling feeling," a Medical Assessment of Petitioner dated August 7, 2008, which found no sign of injury, and the statement by Petitioner at the hearing, ultimately concluding that "greater weight" should be given to the written statements of the officers. Accordingly, the DHO found Petitioner guilty of the charged offenses and imposed the following sanctions: loss of commissary and telephone privileges for thirty days; disallowance of 50% Good Conduct Time (GCT); thirty days disciplinary segregation; and recommendation of a disciplinary transfer.[6] *See* Exh. 9 to Answer.

In the instant Petition, Petitioner alleges that he was denied due process during the DHO hearing because the DHO declined to view a surveillance tape that had been requested by Petitioner. Petitioner asks that the incident report be expunged, that his GCT be restored and that he be returned to a "minimum" security level. *See* Petition [1]; Memorandum [2] in Support of

---

[6] The DHO explained the reasons for the sanctions:

Refusing to obey the orders of staff is prohibited by Bureau of Prisons policy. This conduct displays disrespect for authority and inhibits the efforts of staff to control their areas of responsibility. The misconduct, when witnessed by other inmates, is contagious and often escalates into institutional disturbances. The staff member's order was not considered unreasonable. The loss of privilege sanctions are executed as deterrence.

Assault of another person is serious as this may have resulted in injury to staff or inmates. This misconduct is also a violation of law. Such acts have great potential to escalate in a penal environment, often resulting in acts of retaliation, sometimes involving groups of inmates. The sanctions are very lenient in contrast to your misconduct. The segregation sanction was employed for immediate deterrence. The disallowance sanction is imposed as a constant reminder that involvement in misconduct will prolong incarceration. The transfer sanction was imposed to afford increased security and control.

*See* Exh. 9 to Answer.

Petition.

## Analysis

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that disallowance of GCT, which will result in an inmate's confinement being extended, requires due process.[7] However, the Court explained that due process in the context of prison discipline is not the same as due process in the criminal law context because "[p]rison discipline proceedings are not a part of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply." *Id.* at 556. Thus, the Court held that due process is satisfied in prison disciplinary hearings when the inmate receives a finding from an impartial decision maker, and also receives: 1) at least 24

---

[7] However, with respect to the other sanctions imposed on Petitioner (disciplinary segregation, loss of commissary and telephone privileges and recommendation of disciplinary transfer) no process was due. "[T]he Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2297 (1995)). Rather, the liberty interests which are protected by the Due Process Clause "are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Id.* (citing *Sandin*, 115 S.Ct. at 2297). Accordingly, restrictions or loss of an inmate's institutional privileges, as well as changes in custodial status, do not provide a basis for a constitutional claim. *See Wilkerson v. Stadler*, 329 F.3d 431, 435-36 (5th Cir. 2003) (stating that the Fifth Circuit "has continued to hold post-*Sandin* that an inmate has no protectable liberty interest in his classification"); *Lewis v. Dretke*, 54 Fed. Appx. 795, at * 1 (5th Cir. Dec. 11, 2002) (prisoner's claim challenging restriction of commissary privileges and loss of telephone privileges resulting from allegedly false discipline charges did not implicate due process); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (no constitutional right to visitation privileges); *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) ("administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (rejecting claim that confinement in administrative segregation violated a prisoner's due process rights)); *Wilson v. Bundy*, 976 F.2d 957, 958 (5th Cir. 1992) (citing *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.1988)) ("A prison inmate does not have a protectable liberty or property interest in his custodial classification."); *Williams v. Geo Group, Inc.*, 2008 WL 2724889, at *1 (S.D. Miss. July 10, 2008) ("The classification of Plaintiff in a certain level of custody and the loss of prison privileges are not an 'atypical and significant hardship' of prison life."). Moreover, the court notes that prisoners have no constitutional right to be incarcerated in a certain facility, *see Olim v. Wakinekona*, 461 U.S. 238, 245 (1983), and "[c]lassification of prisoners is a matter left to the discretion of prison officials." *McCord v. Maggio*, 910 F.2d 1248, 1250-51 (5th Cir. 1990).

hours advance written notice of the charges; 2) an opportunity to present documentary evidence and testimony from witnesses; 3) help from other inmates or staff, if needed (*e.g.*, if the inmate is illiterate or the charges are complex); and 4) a written statement of the evidence relied on and the reason for the disciplinary action. *Id.* at 564-70. As set forth below, Petitioner clearly received these protections.

First, Petitioner was provided more than 24 hours of notice of the charges against him, as the Incident Report was delivered on August 14, 2008 and the DHO hearing was conducted on September 17, 2008. *See* Exh. 5 & 9 to Answer.

Second, Petitioner was provided an opportunity to present documentary evidence and testimony from witnesses. He made a statement on his behalf, and inmate R. Smith was called as a witness. *See* Exh. 9 to Answer. Petitioner argues, however, that the DHO refused to view the surveillance tape he had requested and when asked why, the DHO said "because I don't have it here with me." *See* Memorandum [2] at 3, 5. Petitioner alleges that the tape would have showed the incident in question and would have revealed that the officers' statements regarding the incident were false. *See id.* at 6.

The court notes that it is unclear that Petitioner ever actually requested the videotape prior to the DHO hearing.[8] If he did not make a timely request, he has no due process claim. *See*, *e.g.*, *Gradeless v. Deuth*, 24 Fed. Appx. 566 (7th Cir. Nov. 20, 2001) ("Inmates have a limited right to present documentary evidence at a disciplinary hearing, but a request for documents made during the hearing is too late to be timely."); *see also Wilson v. Buss*, 2006 WL 2726207, at * 1 (N.D. Ind. Sept. 20, 2006) (in order to present a potentially exculpatory videotape as evidence at disciplinary hearing, prisoner must make timely request prior to the hearing).

---

[8] Petitioner argues that he requested the videotape when he stated to the UDC: "the evidence is on the camera." *See* Exh. 5 to Answer; Memorandum at 3.

Assuming *arguendo* that Petitioner did make a timely request, he has still failed to establish that his due process rights were violated because "has not demonstrated that the outcome of the hearing would have been different if the DHO had reviewed the videotape." *Minafree v. Dretke*, 2004 WL 2937220, at * 6 (N.D. Tex. Dec. 20, 2004) (rejecting claim that inmate charged with "fighting another inmate without a weapon" and claiming self-defense was denied due process due to DHO's refusal to review prison surveillance videotape of incident); *see also Neal v. Casterline*, 129 Fed. Appx. 113, 115 (5th Cir. Apr. 27, 2005) (*per curiam*) (rejecting prisoner's due process claim based on DHO's refusal to review surveillance videotape during disciplinary hearing on charge of attempted assault of staff member because there was no indication that the tapes would have shown what happened where the offense took place). Indeed, Petitioner was able to present his version of the events to the DHO through his written statement, and his requested witness testified on his behalf. *See Scruggs v. Jordon*, 435 F.Supp. 2d 869, 874 (N.D. Ind. May 31, 2006) (finding that prisoner was not denied due process despite his claim that he was not allowed to present certain evidence during disciplinary hearing because prisoner was able to present his version of the incident - that he was acting in self-defense).

Third, Petitioner was informed of his right to the assistance of a staff representative in the Inmate Rights at Discipline Hearing form read to Petitioner on August 18, 2008. *See* Exh. 6 to Answer. Further, the Notice of Discipline Hearing form, also read to Petitioner on August 18, 2008, reiterates that he had the right to have a full-time staff member represent him at the hearing, a right that he waived. *See* Exh. 7 to Answer. Petitioner argues, however, that he was never informed of his right to a staff representative, but was only informed of his right to have witnesses. *See* Memorandum at 6-7. Nevertheless, a prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary

7

proceeding.⁹ *See Tewell v. Outlaw*, 2008 WL 4216423, at * 4 (E.D. Ark. Sept. 12, 2008) (citing *Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996)); *see also Marshall v. Champion*, 82 F.3d 426, at * 2 (10th Cir. Apr. 18, 1996); *Watt v. Thaler*, 2010 WL 99352, at * 3 (N.D. Tex. Jan. 11, 2010) (citing *Baxter v. Palmigiano*, 4256 U.S. 308, 315 (1976); *Wolff*, 418 U.S. at 570)). Rather, due process requires only that inmates be provided with a staff representative where they are illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Tewell*, 2008 WL 4216423, at * 4 (citing *Wolff*, 418 U.S. at 570); *see also Evans v. Henman*, 925 F.2d 1468, at * 2 (7th Cir. Feb. 20, 1991); *see also Hart v. Whalen*, 2009 WL 5173487, at * 7 (M.D. Pa. Dec. 22, 2009). Petitioner does not allege that he is illiterate (and his pleadings belie such an allegation). Nor are the issues in this case complex. Thus, he has not established a violation of due process on this basis.

Finally, Petitioner was provided a written statement of the evidence the DHO relied on and the reasons for the disciplinary actions. *See* Exh. 9 to Answer.

To the extent that Petitioner challenges the evidence upon which his guilty finding was based, in order for a prison disciplinary decision to pass constitutional muster there merely must be "some evidence" to show that the inmate committed the offense in question. *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent

---

⁹ To the extent that Petitioner claims that the BOP's alleged failure to provide him with a staff representative somehow violated BOP regulations or policy (*see*, *e.g.*, Memorandum at 6-8) such a claim is unavailing. "[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (mere failure of prison officials to comply with their own regulation is not a constitutional violation).

8

assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. Indeed, even if the evidence is "meager," as long as there is "some evidence" to support the findings of the disciplinary board, its decision must be upheld. *Id.* at 456.

In the instant case, the DHO reviewed the evidence presented, including the memoranda from Officers Ponthieux and Johnson, a Medical Assessment of Officer Ponthieux dated August 7, 2008, which reported that Officer Ponthieux stated that he had been kicked in a "private area" and was "experiencing a tingling feeling," a Medical Assessment of Petitioner dated August 7, 2008, which found no sign of injury, and the statement by Petitioner at the hearing, ultimately concluding that "greater weight" should be given to the written statements of the officers. *See* Exh. 9 to Answer. "Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer." *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). In this case, there was clearly "some evidence" to support the DHO's finding. *See Hill*, 472 U.S. at 456 (prison guard's testimony and copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause); *Hudson*, 242 F.3d at 536-37 (holding that the information provided in a written incident report can, standing alone, satisfy the "some evidence" standard). As there was "some evidence" to support the DHO's decision, it must be upheld.

## RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that Rodney Arceneaux's Petition for a Writ of Habeas Corpus [1] be denied and dismissed with prejudice.

NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 8th of March, 2010.

s/Michael T. Parker<br>United States Magistrate Judge